## White v. Logan.

*Negligence—Runaway team — Master and servant — Failure to warn of danger—Vice-principal.*

In an action for injuries sustained by the running away of a team which plaintiff was driving, the case is for the jury and judgment for defendant *n. o. v.* will be refused where there is evidence that plaintiff was told to drive the team by one in charge of defendant's farm, and that the person in charge knew that the team was unsafe and had run away on prior occasions, but did not warn plaintiff.

Trespass for personal injuries. Motion for judgment *n. o. v.* C. P. Chester Co., Aug. T., 1926, No. 102.

*W. S. Harris*, for plaintiff.

*J. Paul MacElree* and *J. Howard Rhoads*, for defendant.

BUTLER, P. J.—The evidence was harmonious that, pursuant to an advertisement put in the Local News of West Chester by Jeandell, employed by defendant upon his farm, plaintiff presented himself thereon and was employed, on April 12, 1926, through Jeandell, and began work the next day. The defendant's testimony was that at this time Jeandell had charge as the farm head, and, furthermore, plaintiff testified that when defendant called upon him at the hospital and was asked by plaintiff about the wages for the days he worked on defendant's farm, defendant replied that was all right, the wages would be paid. This evidence, practically speaking, was conclusive that plaintiff was, with defendant's authority, employed upon his farm. Indeed, the testimony of defendant, Jeandell, and Botwright acknowledged that plaintiff was thus employed. Defendant testified that at this time Botwright was in effect his vice-principal on the farm; that because he did not know much about farming, nor about Jeandell or the other man on the farm, Botwright, well known by him, was placed on the farm to have general charge and control of it and the men. Even if Botwright had been defendant's employee in a much less important capacity than vice-principal—as admittedly, under all the testimony, at the time of the injury to plaintiff, Botwright was directing and overseeing plaintiff in connection with his use of the manure spreader—any negligence of his, placing plaintiff in the danger which caused his accident, would have been chargeable to defendant: Kelly v. Henry Bower Chemical Manuf. Co., 239 Pa. 555.

Plaintiff testified that when he began work on this farm, six days before the accident, Jeandell had told him to use a certain light-weight pair of horses for such work as required the use of horses, that he had done so, and down to the day of the accident had no knowledge or experience respecting any other horses on the farm; that on the day of the accident, he told Botwright that the small horses could not handle the manure spreader, and that Botwright then said, "there is the big black team in the stable; they are to be used in the spreader;" that he and Jeandell then got the blacks, hitched them to the spreader in the presence of Botwright; that he, the plaintiff, mounted the spreader, started the horses; that they at once jumped into a run; that he could not control them, and eventually was thrown out, suffering the injuries of which he complains.

Everett Smiley testified that he had worked on defendant's farm for nearly two years; that he undertook to drive the blacks in the fall of 1925; that in the start they pulled the double trees loose and pulled him over the front of the wagon, but that he succeeded in stopping them; that last February, 1926, he hitched them to a wagon; that as he stood by them with the lines in his hands, with apparently nothing to frighten them, they plunged and ran away, finally entering a wood and demolishing the wagon.

Botwright and Jeandell knew of the conduct of the blacks, and that, to say the least, they were apparently unsafe horses for use by a man who was uninformed and unacquainted with their past deeds and dispositions. This was made clear by Botwright and Jeandell when they were called by the defense to contradict the testimony of plaintiff to the effect that Botwright ordered him to use the blacks and gave no information about their manners and habits, Botwright testifying that he told plaintiff, if he used the blacks, he must be careful, as they ran away as often as they got a chance, and that Jeandell then said, "I forbade White (plaintiff) to use those horses because we know what kind of horses they are;" Jeandell testifying that he had told the plaintiff that the blacks had to be watched.

It is thus obvious, we believe, that binding instructions could not properly have been given for defendant, and that judgment may not now be directed for him. Under the evidence, it was practically free from question that plaintiff was in defendant's employ at the time the blacks ran away with him; that they were dangerous for use by an uninformed, uncautioned man; that Botwright so represented defendant on the farm as to make defendant responsible for what he, Botwright, said and did in respect of plaintiff's safety in the matter of his using the blacks; that Botwright knew the blacks as runaways, unsafe in uninstructed, uncautioned hands, and then there was the positive testimony of plaintiff to the effect that without any instruction or warning, in complete ignorance of the unfortunate experiences of these horses, calculated to make them, what apparently they were, horses confirmed in the disposition to run away, Botwright simply ordered him to use them in the spreader.

That the jury was thus warranted by abundant evidence in finding that defendant was, through Botwright, guilty of negligence, rendering him responsible for plaintiff's injuries, is, we believe, clear.

Counsel for defendant urges that the evidence relative to the past conduct of the blacks, their known characteristics and manners, did not warrant submission to the jury of the question whether defendant was guilty of negligence, if his vice-principal, Botwright, directed plaintiff to use them, without informing him of their past deeds, without cautioning him to use special care. While, as appears from the charge, the jury were carefully instructed that

there could be no recovery unless, by the evidence, they were satisfied that it was negligent to have plaintiff use the blacks without cautioning him concerning their records and disposition, it is, in our opinion, manifest that it was inexcusably negligent for Botwright to direct and have plaintiff use the blacks, as the jury have found he did, without instruction and cautioning plaintiff; Botwright, defendant's vice-principal in fact, and by virtue of our act of assembly (Kelly *v.* Henry Bower Chemical Manuf. Co., *supra),* according to his testimony, knew the blacks as horses that would run away whenever they got a chance, and this, coupled with Smiley's testimony as to the past experiences with these horses, clearly required defendant, through Botwright, his vice-principal, to give plaintiff the benefit of instructions and cautionings about them when he used them at the direction of Botwright. That no wrong was done defendant in submitting this question of negligence to the jury, we are confident.

With respect to the cases cited by counsel for defendant, we think it is enough to call attention to the facts present in our case according to the testimony, that some months before the blacks ran away with plaintiff, they had, in starting, pulled the double trees loose, tried to run, and pulled Smiley over the front of the wagon before he got them stopped—an experience that would naturally tend to spoil them and make runaways of them—that, later, some two or three months before the accident, when Smiley had completed attaching them to a wagon and had the lines in his hands preparatory to mounting the wagon, without any apparent cause for alarm, they plunged and ran away and persisted until they had entered a wood and demolished the wagon; that Botwright, defendant's vice-principal, knew them as confirmed runaways; and that the question here submitted to the jury was not whether these horses had demonstrated themselves to be so dangerous that it was negligent to have plaintiff use them under any circumstances, but merely whether the exercise of due care required that he be informed of their past experiences, of their conduct and disposition, so that he might use corresponding caution in their management.    The rule for judgment is dismissed.

From Truman D. Wade, West Chester, Pa.